531 P.2d 635 (1974)
Esther M. MOSS, Plaintiff-Appellant,
v.
George Wayne MOSS, Defendant-Appellee.
No. 73-259.
Colorado Court of Appeals, Div. I.
November 26, 1974.
Rehearing Denied December 17, 1974.
Certiorari Granted February 24, 1975.
*636 Epstein, Lozow & Preblud, P.C., Frederick Epstein, Gary Lozow, Arlan I. Preblud, Denver, Colo., for plaintiff-appellant.
Robert Budganowitz, Denver, Colo., for defendant-appellee.
Selected for Official Publication.
SMITH, Judge.
A divorce decree was entered on September 25, 1972, dissolving the marriage of Esther M. Moss and George Wayne Moss. On December 7, 1972, permanent orders were entered dividing the parties' marital property and awarding alimony to Mrs. Moss. She appeals from these permanent orders.
The issues upon appeal are: (1) Whether the trial court abused its discretion in ordering alimony payable in periodic installments, terminating at the end of a five-year period; and, (2) whether the value of the husband's professional corporation was properly considered in the property division.
The parties were married in 1949. Mrs. Moss was employed as a teacher and Dr. Moss was a senior in college. She was so employed for the first sixteen years of their marriage. During the first ten years of marriage Dr. Moss attended college and medical school and served his internship and residency. It is undisputed that both *637 parties have made significant financial contributions towards the family income over the years. In 1967, Mrs. Moss stopped working at the request of Dr. Moss. Two children were born as issue of this marriage who were fifteen and fourteen years of age at the time of the hearing on permanent orders.
After an extensive hearing, the trial court divided the property and awarded alimony. The family home, in which the parties have an equity of approximately $18,000 and which has a market value of $41,000, was awarded to Mrs. Moss, together with all of the furniture and furnishings, valued at approximately $9,000. The court concluded that although it would normally have awarded a half interest in the equity of the home to Dr. Moss, Dr. Moss's one-half interest should be awarded to plaintiff as alimony. The only automobile was awarded to Mrs. Moss. Debts of $8,683.68 owed to the parties' bank were ordered to be paid by Dr. Moss. Dr. Moss was ordered to pay, as additional alimony, a total of $39,000 over a five-year period, payable in monthly installments of $750 per month during the first year, and decreasing the monthly payments by $50 after each succeeding year. The court retained continuing jurisdiction over the matter of alimony during this period in the event of any substantial change of circumstances. Child support was included within the alimony although the specific portion was not designated and further child support was to be determined at the end of the five-year period. Dr. Moss was required to continue medical insurance for the children and was to be responsible for all of their medical and dental bills not covered by such insurance. The children were also to be made irrevocable beneficiaries of a $50,000 life insurance policy. And, as security for the required payments, another $50,000 life insurance policy was to be maintained by Dr. Moss during the five-year alimony period with the children as primary beneficiaries and with Mrs. Moss as secondary beneficiary. Dr. Moss was also required to pay Mrs. Moss's attorneys fees of $2,200. Mrs. Moss was given custody of the children. No issue has been raised concerning these orders.
Dr. Moss was awarded a mutual fund, having a value of $32, some personal belongings, and all of his interest in his professional corporation. Affidavits established that his equity in this corporation, as of November 20, 1972, was $11,567.67, one-half of the total net worth of the corporation, and that he had a $7,065.88 interest in the corporation's profit sharing plan, no portion of which would vest for two years after the permanent orders and would not vest in its entirety until five years thereafter. He also had a loan receivable from the corporation in the amount of $3,916.80.

I
Mrs. Moss contends that her alimony is a "lump-sum" award and that it should therefore be disapproved. In reliance on the rule stated in Carlson v. Carlson, 178 Colo. 283, 497 P.2d 1006, she asserts that absent "special circumstances" which require or make a lump-sum award of alimony proper, or absent a "compelling reason" that necessitates such an award, a lumpsum award payable in installments over a period of years should not be made.
C.R.S.1963, 46-1-5, authorizes the court to award alimony and does not preclude alimony in gross payable in installments over a period of time. Whether the court should award periodic alimony or alimony in gross has generally been held to be a matter within the sound discretion of the trial court. Carlson v. Carlson, supra; and see Cummings v. Lockwood, 84 Ariz. 335, 327 P.2d 1012.
There are two difficulties which courts have historically recognized with lump-sum awards: (1) They are final judgments which cannot subsequently be modified upon a change of circumstances; and (2) they terminate after a certain period of time. See Carlson v. Carlson, supra and Yandell v. Yandell, 39 So.2d 554 (Fla.). Although the instant award and *638 the traditional lump-sum award both terminate on a fixed date, they differ in that this award is for an amount that may be modified during the five-year period upon a substantial change of circumstances affecting either party.
There is no mathematical formula which establishes what are "special circumstances" or what is a "compelling reason." In making such a determination the court must carefully consider a variety of factors, which include, in the instant case, the efforts and attitudes of the parties in the past in accumulating and spending the family assets, the conduct of the parties during the marriage, their respective ages and earning capacities, the duration of their marriage, their health and physical condition, and their style of living and their ability to adjust to a new economic situation. Kraus v. Kraus, 159 Colo. 331, 411 P.2d 240; Nunemacher v. Nunemacher, 132 Colo. 300, 287 P.2d 662. We will not substitute our judgment for that of the trial court in its analysis of the significance of each of these factors.
Stefonick v. Stefonick, 118 Mont. 486, 167 P.2d 848, upon which Mrs. Moss also relies, in our view, provides too rigid a formula in awarding alimony and ignores the responsibility of the courts to exercise their discretion in resourceful ways, which will enable formerly married persons to make an orderly transition to single status. The rationale supporting permanent periodic alimony and discouraging lump-sum alimony rests upon a basic presumption that women cannot provide an income for themselves and that, therefore, courts should provide for their livelihood for an indefinite period, or more specifically, until they remarry.
A more realistic approach which more accurately reflects contemporary social patterns is articulated in Ziegenbein v. Damme, 138 Neb. 320, 292 N.W. 921, 923, wherein the court states:
"We are living in an era of feminine equality, unhesitating separations, and rapid readjustments. In some of the situations which present themselves between husband and wife, it is unquestionably better for both parties that their rights and obligations be definitely fixed so that the ties between them can be completely severed and they can face with certainty the measure of the final adjustment which they will be required to make. This can properly be done by a gross allowance of alimony. . . ." (emphasis added)
The court received extensive testimony pertaining to the facts and circumstances pertinent to the award of alimony and made detailed findings which demonstrate that the court in its ruling was guided by special circumstances and compelling reasons. The entire equity in the family home awarded to the wife provided her with a tangible asset which she could rely upon in the event of an emergency. Under these circumstances, the court did not abuse its discretion in determining that it would be to the benefit of both parties that their rights and obligations be definitely terminated at the end of the five-year period.

II
Mrs. Moss argues that the trial court abused its discretion in not placing a value on Dr. Moss's interest in the professional corporation, and in not considering the same for purposes of making an equitable award to her based upon the value of the marital estate of the parties. We disagree. An affidavit was submitted to the court stating in detail the value of the corporation and testimony was received which pertained to the operation and value of the corporation. The fact that the court did not attach a specific value to the corporation in its order does not necessarily mean that the court failed to consider it. The court stated in its order that it had taken into consideration many factors in deciding the question of maintenance and support and division of property. Therefore, we presume the value of the corporation, as reflected in the evidence, was considered *639 by the court in entering orders relative to alimony and division of property.
The trial court may award a wife more or less than one-half of the assets as the circumstances of the case may justify. Hyde v. Hyde, 169 Colo. 403, 457 P.2d 393. In the instant case, the division of assets was not so disproportionate as to amount to an abuse of discretion.
Judgment affirmed.
Van CISE, J., concurs.
COYTE, J., dissents.
COYTE, Judge (dissenting):
I dissent.
In Carlson v. Carlson, 178 Colo. 283, 497 P.2d 1006, the court established the principle that "periodic payments are normally preferred, because such payments can be modified if a change in circumstances occurs." Here, the evidence all points to circumstances where permanent periodic payments should be made. The court did not make findings of compelling reasons or special circumstances which would authorize it to make a lump sum award. Such findings are mandated by Carlson, supra, before a lump sum or award in gross can be made.
The husband is a professional man with a substantial income. The wife, after aiding the husband in attaining his professional status, quit work because of her health and at her husband's request. She has an ulcer condition, has to remain on a diet, and might periodically have a flareup. She has been unable to return to her teaching profession. A determination as to what her situation will be five years down the road would be mere speculation and conjecture.
The court acted arbitrarily and abused its discretion in failing to keep the alimony issue open beyond the five year term. To meet the goals the majority finds desirable, the court could have required nominal alimony payments after the five-year period but should not have entered an order which will terminate at that time all alimony obligations arising from this marriage of twenty-three years duration. To do so under the circumstances of this case was error and contrary to existing law as enunciated by the Supreme Court in Carlson, supra.