552 S.W.2d 280 (1977)
D---- E---- W----, Appellant,
v.
M---- W----, Respondent.
No. 37597.
Missouri Court of Appeals, St. Louis District, Division Two.
May 3, 1977.
Motion for Rehearing or Transfer Denied June 9, 1977.
*281 Hullverson, Hullverson & Frank, Inc., James S. Collins, II, St. Louis, for appellant.
Richard A. Ong, St. Louis, for respondent.
McMILLIAN, Presiding Judge.
Appellant D---- E---- W---- appeals from a decree of dissolution of marriage entered by the St. Louis Circuit Court of St. Louis County, awarding the respondent $10,000 as gross maintenance and $1,000 attorney's fees. For reversal, appellant argues that the trial court abused its discretion in making the above awards because he was financially unable to pay such amounts and because the respondent had sufficient resources for her own support and attorney's fees.
The trial court's judgment must be sustained by this court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. . . ." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. 1976). Because the awards in the challenged decree are supported by the evidence and based upon proper application of §§ 452.335 and 452.080 of the new Dissolution of Marriage statute, § 452.300-452.415, RSMo 1973 Supp., the decree is affirmed insofar as it orders a lump sum award of $10,000 maintenance and $1,000 attorney's fees, but modified to allow the appellant to pay the gross award in monthly installments.
Appellant and respondent were married on December 12, 1973, and separated on December 31, 1974. It was the fourth marriage for the appellant and second for the respondent. During the marriage they lived in the respondent's home with her four children, ages 14, 15, 17 and 19, from a previous marriage.
Respondent worked at the main campus of Washington University for twelve (12) years until November 11, 1974, when she lost her job because she improperly ordered $1,453.29 worth of film for the appellant's studio on the university's accounts. She was rehired by the Washington University Medical School as a typist on June 12, 1975, and presently works there earning a net salary of $385 per month. This is about $200 a month less net income than she received at her former job. In addition, respondent receives about $200 a month as child support from her first husband for her four children. Her monthly expenses total $874 a month: $633 as regular monthly expenses, $123 of personal monthly expenses and $118 as expenses for her children which are not covered by the child support payments. She also owes $15,000 on her home (equity-$18,000), $808.44 for her car (value-$1475) and $650 to her childrens' orthodontist. The respondent was 38 years of age at the time of the trial and suffered from anemia and low blood sugar.
Appellant is employed as a switchman for Frisco Railroad where he had earned a net salary of $9,000 for the year 1972, $10,000 for 1973 and $4,000 for 1974. In the year 1974 appellant was on sick leave because of hypertension but worked at his photography studio whenever he was not at the railroad. Although his photography studio showed a net loss in 1974, appellant testified *282 that he had a better idea of what he needed ". . . to do now to earn more money" as a photographer. He also testified that if his photography business failed he could return to the railroad full-time. Appellant indicated that his monthly expenses totaled $948 a month and that he owed at least $1161.84 per month as installment payments on debts. He is also obligated on a $15,000 Small Business Administration loan.
When respondent met the appellant he was heavily in debt. After they were married respondent helped appellant in his business by handling the books and correspondence. She also made substantial loans to him and is presently still in debt to the following sources for loans she took out on behalf of the appellant:

Source Amount
Credit Union - respondent borrowed a
total of $5,000 and $2,000 has been
repaid. $3,000.00
American Express 717.00
Laclede Gas - respondent paid this bill
to cover a bad check appellant had
written. 280.00
Children's Trust Accounts - borrowed
before the marriage. 3,690.00
Children's Trust Accounts - borrowed
in 1974, after the marriage. 3,100.00
Children's Trust Accounts - borrowed
in 1975. 1,765.00
Famous Barr Company - to pay for
appellant's photo equipment. 105.00
 __________
 TOTAL __ $12,657.00

In addition to the above, respondent is the co-signer on the Small Business Association loan of $15,000 that the appellant took out.
We find no abuse of discretion on the part of the trial court in ordering appellant to pay respondent maintenance, for the record indicates that respondent meets the threshold requirements for such an award; that is, she "lacks sufficient property . . . to provide for [her] needs" and she "is unable to support [herself] through appropriate employment . . . ." § 452.335 subd. 1, RSMo 1973 Supp. After one year of marriage, respondent owes $12,657.00 because of loans to or for the appellant and is potentially liable for the Small Business Association loan of $15,000. She is unable to meet her own needs while paying these debts because her net income is only $385.00 a month.
An award of maintenance would allow respondent to pay off the debts she incurred on behalf of appellant and thereafter she could meet her needs with her own resources. Furthermore, the order is supported by § 452.335 subd. 2, RSMo 1973 Supp. Respondent does not have, independently, sufficient financial resources to meet her needs, especially when her debts are considered, § 452.335 subd. 2(1). While the marriage was of extremely short duration, id. subd. 2(4), respondent's conduct during the marriage, while perhaps not wise was magnanimous and the appellant profited considerably from her extreme generosity. Id. subd. 2(7). In Page v. Page, 516 S.W.2d 537, 540 (Mo.App.1975), the court acknowledged that the sacrifices made by the wife are relevant in determining whether the award of maintenance was appropriate, indicating that good as well as bad conduct should be considered. Lastly, based on the appellant's own testimony that his income will increase, the court could find that he was capable of paying maintenance while meeting his own needs. Id. subd. 2(6).
In Richardson v. Richardson, 524 S.W.2d 149, 153 [Mo.App.1975], this court acknowledged that the appellant husband's anticipated income was to be considered in awarding alimony. Cf. Rutlader v. Rutlader, 411 S.W.2d 826, 829 (Mo.App.1967), Myers v. Myers, 356 S.W.2d 522, 525 (Mo. App.1962). Having determined that the trial court did not abuse its discretion by ordering a maintenance award, the question remains whether awarding maintenance in a gross amount is permissible under the new statute. We hold that a trial court does have the power to award a gross amount under the new Dissolution of Marriage law, § 452.335, RSMo 1973 Supp.
Section 452.080, RSMo 1969, of the previous divorce act, which specifically authorized *283 alimony in gross was not repealed by the Missouri legislature when the dissolution statute was passed. In addition, the words of § 452.335, RSMo 1973 Supp., the maintenance provision, do not preclude an interpretation authorizing a gross award. The statute specifies "The maintenance order shall be . . . for such periods of time as the court deems just . . . ." (Emphasis added.) By such language the statute allows, but does not require, that awards be extended over several periods of time. Section 308 of the Uniform Marriage and Divorce Act, §§ 101-506 (1970), which is identical to § 452.335, RSMo 1973 Supp., of the Missouri statute,[1] has been interpreted as allowing gross awards. In re Marriage of Genevieve Icke & Lewis Icke, 35 Colo.App. 60, 530 P.2d 1001 (1974) and Moss v. Moss, 35 Colo.App. 53, 531 P.2d 635 (1974).
Moreover a gross award is especially consistent with the purposes and intent of the new Dissolution of Marriage Statute. It allows the parties to completely sever their ties while a periodic award requires a continual dependence of one spouse on another. Lemp v. Lemp, 249 Mo. 295, 155 S.W. 1057, 1061 (1913). The presumption behind an award of periodic payments is often that a woman is unable to earn an income and should be supported indefinitely or until she remarries, cf. Moss v. Moss, supra. A lump sum award more appropriately recognizes that in many cases once an initial payment has been made allowing the needy spouse to get a new start, he or she will no longer be dependent. Cf. § 452.335 subd. 2.
Although there have not been any Missouri cases which directly address the issue of whether gross awards are appropriate under the new dissolution of marriage statute, this court recently reversed a gross award which was granted under the new statute. LoPiccolo v. LoPiccolo, Mo.App., 547 S.W.2d 501, 1977. There we held that a gross award which was scheduled to terminate after four years was improper, not because such awards were unauthorized under the new statute, but because there was no evidence indicating the wife's circumstances would change in four years and that she would be less needy. Therefore, this opinion implicitly supports the view that gross awards are appropriate under the dissolution statute.
In summary, the retention of § 452.080, RSMo 1969, authorizing gross awards, the interpretation given the language of § 452.335, RSMo 1973 Supp., by states which have adopted the Uniform Marriage and Divorce Act, the opportunity a gross award provides for completely severing the ties between the parties, and the consistency of a gross award with the underlying view of maintenance in the new dissolution statute, indicates that the Missouri legislature purposefully and appropriately retained gross awards in the dissolution of marriage statute.
Recognizing that a gross award is permissible under the statute, we further note that a gross award was especially appropriate in this case. Unlike periodic payments, a gross award is a lien on the payor's property, § 452.080, RSMo 1969, and survives the payee-wife's death or remarriage. Swanson v. Swanson, 464 S.W.2d 225, 228 (Mo.1971). Certainly here, where the appellant is continually in debt and has a history of not being able to meet his financial obligations, the trial court could have reasonably believed that the respondent needed the additional security of collecting her maintenance that a gross award would provide.
Because a gross award is not modifiable by a court, it should only be awarded when it is not likely the conditions of the parties will change. Laney v. Laney, 535 S.W.2d 510, 512 (Mo.App.1976). It was not, however, an abuse of discretion for the trial court to forsake the possibility of altering this award. Since respondent's debts are a fixed amount which will not be altered, it is not likely the maintenance award will need *284 to be modified to make it possible for the respondent to meet her needs.
For the above reasons a gross award was appropriate in this case. As mentioned, an award of $10,000 would allow respondent to pay off the debts she incurred on appellant's behalf and thereafter meet her own needs with her present income. Under the circumstances of this case, however, the trial court abused its discretion in ordering appellant to pay the award in a gross amount rather than in installments. When payable in installments a gross award does not lose its distinguishing characteristics and thus its special propriety in this case. Hill v. Hill, 443 S.W.2d 192, 193 (Mo.1969) and Laney v. Laney, supra. The appellant's testimony clearly demonstrated that he had virtually no assets at the time of the dissolution of marriage and he could not possibly afford to pay a lump sum of $10,000. To order him to do so would be contrary to the mandate of the statute that the spouse from whom maintenance is sought be able to meet his needs while paying maintenance, § 452.335 subd. 2(6), RSMo 1973 Supp. However, the appellant's testimony also indicated that his income would increase and thus it is likely he can meet his own needs while paying this gross award in installments. Therefore, the trial court's order is modified to allow appellant to pay the $10,000 gross award in installments of $100.00 per month.
The appellant has also appealed the trial court's order that he pay $1,000 in attorney's fees to the respondent's attorney. Section 452.355 RSMo 1973 Supp., provides that a court "after considering all relevant factors including the financial resources of both parties" may order one party to pay reasonable attorney's fees for the other. A court is vested with broad discretion in making this order. Larison v. Larison, 524 S.W.2d 159 (Mo.App.1975). The trial court's order to pay attorney's fees is supported by its finding that respondent was unable to meet her needs and that appellant, while presently in debt, realistically had the potential to better his financial condition.
Accordingly, judgment is affirmed as modified.
STEWART, J. and REINHARD, J., concur.
NOTES
[1] The only difference in these sections is that the Uniform Act explicitly excludes fault as a relevant factor while the Missouri statute includes this. The difference is not significant here.